**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**UNITED STATES OF AMERICA**

**v.**                                                          **Case No. 8:21-CR-92-SCB-CPT**

**GUESSEPPE CARLOS MORENO-VASQUEZ**
_____/

**MOTION FOR DEPARTURE PURSUANT TO U.S.S.G. 5H1.1**
**AND REQUEST FOR VARIANCE PURSUANT TO 18 U.S.C. 3553(a)**

The Defendant, Guesseppe Carlos Moreno-Vasquez, by and through the undersigned

counsel, hereby files this Sentencing Memorandum, in which he asks this Honorable Court to

impose a sentence "sufficient, but not greater than necessary" to achieve the stated purposes of

sentencing and hereby requests a departure pursuant to U.S.S.G. 5H1.1. In support of his motion,

Mr. Moreno-Vasquez states:

1.      On, September 28, 2021, Mr. Moreno-Vasquez entered a plea of guilty to a lesser charge

of Conspiracy to Distribute and Possess with Intent 100 K or more of Marijuana.

2.      Mr. Moreno-Vasquez is scheduled to be sentenced by this Honorable Court on December

30, 2021.

3.      Mr. Moreno-Vasquez just turned 19 years old on December 13, 2021. He was born in

Esmeralda, Ecuador. PSR ¶ 44. Mr. Moreno-Vasquez left home at 14 years of age due to abuse

by his parents.   PSR ¶ 44.

4.      Mr. Moreno-Vasquez was barely over the age of 18 at the time of the offense which

began a month after his 18th birthday.

5.      Prior to his arrest for the instant offense, Mr. Moreno-Vasquez was employed as a

mariner earning $10.00 per day since he was 14 years of age. PSR ¶ 67.

6.    Mr. Moreno-Vasquez reported that he earned approximately $10.00 dollars per day when he could find work.   PSR ¶ 67.

7.    According to the Pre-Sentence Report, Mr. Moreno-Vasquez's recommended advisory guideline range is 46-57 months.

8.    As to the specific offense characteristics, it is maintained that Mr. Moreno-Vasquez's youth and lack of criminal history significantly impact the nature and length of sentence the court should consider.

9.    Mr. Moreno-Vasquez did not direct negotiations for sale or purchase of the narcotics.

10.    There is no evidence to suggest that Mr. Moreno-Vasquez had completed multiple transports of the alleged narcotics or was part of a larger scheme or plan to import narcotics.

11.    There is no evidence to suggest that Mr. Moreno-Vasquez loaded, unloaded, packaged, wrapped or bundled the alleged narcotics.

12.    There is no evidence to suggest that Mr. Moreno-Vasquez had knowledge or understood the scope of the enterprise, or the activities of others involved.

13.    There is no evidence to suggest that Mr. Moreno-Vasquez had an equity interest in the alleged narcotics, or that he would receive a percentage of the profits from the cargo.

14.    There is no evidence to suggest that Mr. Moreno-Vasquez played any role in the planning of the criminal scheme.

15.    There is no evidence to suggest that Mr. Moreno-Vasquez had a role in the ultimate distribution of the narcotics.

16.    There is no evidence to suggest that Mr. Moreno-Vasquez financed any portion of the smuggling operation.

17.    Mr. Moreno-Vasquez has a speech impediment which makes it likely that he will suffer

from bullying or negative actions based upon this medical condition.

## MEMORANDUM OF LAW

### a.   Request for Departure

U.S.S.G. §5H1.1 provides in pertinent part that an offender's age including youth is relevant in determining whether a departure is warranted. Specifically, the guidelines advise that if considerations based on age, individually or in combination with other offender characteristics, are present to an unusual degree and distinguish the case from the typical cases covered by the guidelines then a departure is warranted.   Mr. Moreno-Vasquez's age is relevant in determining whether a departure is warranted.   Undersigned counsel submits that considerations based on age, individually or in combination with other offender characteristics, are present to an unusual degree and distinguish this case from the typical cases covered by the guidelines. Over the course of the history of the drug interdiction operation "Panama Express" the type of narcotics that have traditionally been seized has been cocaine.   The instant case presents a less serious narcotics trafficking offense for marijuana.   These factors in combination with Mr. Moreno-Vasquez's age militates in favor of a significant departure from the guidelines sentence.

It is important to recognize that Mr. Moreno Vasquez's offense occurred when he was barely eighteen years old, and his judgment was under-developed. Of course, youth always has been a factor that a court must consider under 18 U.S.C. § 3553(a) as part of a defendant's history and characteristics, however since an amendment in 2010 the sentencing guidelines now include youth as a specific attribute which qualifies for a departure pursuant to the guidelines. The Supreme Court, in Roper v. Simmons, 125 S. Ct. 1183 (2005) held that youth matters in the context of the most serious offense, murder. It would seem equally so in lesser cases involving drugs or drug trafficking.   Gall v. United States, 552 U.S. 38 (2007), upheld a significant

variance in part because of Gall' s age at the time of the offense. The idea of "youthful indiscretion" stems from and an underdeveloped sense of responsibility found in youth more often than in adults. Immaturity results in impetuous and ill-considered actions and decisions. The susceptibility of juveniles to immature and irresponsible behavior means "their irresponsible conduct is not as morally reprehensible as that of an adult.... [t]he relevance of youth as a mitigating factor derives from the fact that the signature qualities of youth are transient; as individuals mature, the impetuousness and recklessness that may dominate in younger years can subside." Johnson v. Texas, 509 U.S.350, 367 (1993) (a jury may consider a 19-year-old defendant's youth as a mitigating factor because "youth is more than a chronological fact. It is a time and condition of life when a person may be most susceptible to influence and psychological damage."   In United States v. Naylor, 359 F. Supp.2d 521, 524-25 (W.D. Va. 2005) the district court reduced Naylor's career offender sentence from 188 to 120 months because Naylor's prior convictions for robberies were committed during one six-week period as a juvenile. It is almost axiomatic that juveniles have an underdeveloped sense of responsibility and are more vulnerable to negative influences and peer pressure, and their character is not as well formed.   In an article published in the ABA, "Adolescence, Brain Development and Legal Culpability,"https://capitalpunishmentincontext.org/files/resources/juveniles/adolescencecopy.pdf,   Dr. Elizabeth Sowell, a member of the UCLA brain research team, has led studies of brain development from adolescence to adulthood. She found that the frontal lobe undergoes far more change during adolescence than at any other stage of life. It is also the last part of the brain to develop, which means that even as they become fully capable in other areas, adolescents cannot reason as well as adults. Based upon this research it is of unreasonable to expect younger adults to have adult levels of organizational skills or decision-making skills attributed to mature

offenders. This same research shows that brain development is not complete until approximately age twenty-five. Thus Guesseppe, at age eighteen, suffers from the same immaturity and inability to make sound judgments that other teenagers do. There was no magical switch that flipped in his brain on his eighteenth birthday that allowed for a mature and reasoned decision to embark on the voyage. Dr. Jay Giedd, chief of brain imaging in the child psychiatry branch at the National Institute of Mental Health, has devoted his career to researching adolescent brain maturity. Giedd's scanning studies proved what every parent of a teenager knows: not only is the brain of the adolescent far from mature, but both gray and white matter undergo extensive structural changes well past puberty. "When we started," says Giedd, "we thought we'd follow kids until about 18 or 20. If we had to pick a number now, we'd probably go to age 25."The very last part of the brain to be pruned and shaped to its adult dimensions is the prefrontal cortex, home of the so-called executive functions planning, setting priorities, organizing thoughts, suppressing impulses, weighing the consequences of one's actions .Claudia Wallis, "What Makes Teens Tick," Time Magazine (Vol. 163 No. 19, May 10, 2004),

http://www.cs.ucr.edu/~neal/2006/mentor_mtgs/mtg3_handout3_teenagebrain.pdf

Mr. Moreno-Vasquez's youth in combination with other offender characteristics which are present to an unusual degree and distinguish this case from the typical cases covered by the guidelines warrant consideration for a departure from the stated guideline sentence.

b. **Request for Variance**

Mr. Moreno-Vasquez argues the court may take into consideration his youth and nature of the criminal conduct pursuant to the provisions of 18 U.S.C. § 3553(b)(1). Mr. Moreno-Vasquez was a man of extreme poverty earning the equivalent of $10.00 per day when he was recruited for this journey.   His extreme poverty, lack of education and no prior criminal history

and lack of familial guidance should also be considered in fashioning a reasonable sentence, Mr. Moreno-Vasquez's candor and cooperation with United States government officials upon his arrest, his youth, background and lack of criminal history are all factors that warrant a variance in this matter.   Pursuant to United States v. Booker, 543 U.S. ---, 125 S. Ct. 738 (2004), the Supreme Court ruled that the United States Sentencing Guidelines, as written, are unconstitutional.   As a remedy, the Court excised those portions of the federal sentencing statute that made the Guidelines mandatory, 18 U.S.C. § 3553(b)(1), and § 3742(e).   Sentencing courts must now consider the Guidelines but are not bound to apply them in every case.

> So modified, the Federal Sentencing Act . . . makes the Guidelines **effectively advisory.** It requires a sentencing court to consider Guidelines ranges, *see* 18 U. S. C. A. § 3553(a)(4) (Supp. 2004), but it **permits the court to tailor the sentence in light of other statutory concerns as well**, *see* § 3553(a) (Supp. 2004).

Booker, 125 S.Ct. at 757 (emphasis added).   Thus, in Booker, the Supreme Court instructed federal district courts to consider the guidelines, but to impose sentences in accordance with 18 U.S.C. § 3553. *See id.*

The first sentence of that statute, 18 § 3553(a), states that "the court shall impose a sentence sufficient, **but not greater than necessary**, to comply with the purposes set forth in paragraph (2) of this subsection."   See 18 U.S.C.   3553(a) (emphasis added).   The purposes set forth in subsection 3553(a)(2) are:

the need for the sentence imposed --

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
(B)  to afford adequate deterrence to criminal conduct;
(C) to protect the public from further crimes of the defendant; and
(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. 18 U.S.C. § 3553(a)(2).

A sentence sufficient to meet these goals can be achieved with a sentence far less than the sentence recommended in this case.

Furthermore, § 3553(a)(2)(B) & (C) instruct courts to consider the needs to afford adequate deterrence to criminal conduct and to protect the public from further crimes of the defendant.    Obviously, Mr. Moreno-Vasquez is facing a significant prison sentence as a result of his offense.   However, both the need to protect society from Mr. Moreno-Vasquez crimes and the interest in generally deterrence can be achieved with a reasonable sentence far less than 46 months. Because of the unique nature of this case including Mr. Moreno-Vasquez's age at the time of the offense his personal involvement in the criminal enterprise was far less than the typical defendant subject to a significant prison sentence.

Lastly, 18 U.S.C. § 3553(b)(2)(D) instructs courts to consider imposing a sentence to "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner."   It is respectfully submitted, however, that such education or training will be available to Mr. Moreno-Vasquez with a sentence far below that recommended by the Guidelines in this case. Based upon these factors, Mr. Moreno-Vasquez respectfully asks this Honorable Court to impose a reasonable sentence, below his advisory guideline range.

WHEREFORE, the defendant respectfully requests this court recognize Mr. Moreno-Vasquez's youth in combination with the specific attributes of this offense and amend the guidelines accordingly.   In addition, Mr. Moreno-Vasquez requests this court recognize the unique nature and circumstances of the offense conduct and Mr. Moreno-Vasquez's youth, disadvantaged background and lack of prior record when fashioning a sentence that is

sufficient, but not greater than necessary to recognize the seriousness of the offense yet allowing for the particular facts and circumstances for which the defendant is held accountable.

    c.   **Request for Juvenile Facility During Incarceration**

While Mr. Moreno-Vasquez is not technically considered a "juvenile" within the context of policies regarding placement in the Bureau of Prisons, Mr. Moreno Vasquez requests this court recommend a facility within the Bureau of Prisons provided for juveniles convicted of criminal offenses within the federal system. While a "juvenile" within the federal system is defined as an offender that committed a criminal offense before the offender's 18th birthday, those juveniles that are incarcerated continue to be housed at "juvenile" facilities until their 21st birthday.   Mr. Moreno-Vasquez was not at juvenile at the time of the offense, however, he is still under 21 years old and is in need of similar protections and developmental programs afforded offenders of the same age.

The Bureau of Prisons consider juveniles a special population with special designation needs. Each juvenile is placed in a facility that provides the appropriate level of programming and security. Several factors – such as age, offense, length of commitment, mental and physical health – are considered when making placements. The Bureau of Prisons recognizes that treatment needs of the juvenile offender population must be continually monitored to ensure programs effectively meet existing needs. To the extent programs are available for those offenders sentenced as juveniles, Mr. Moreno-Vasquez requests this court recommend a facility with programs and security commensurate with his age and maturity level.

    d.  **Educational or Other Training**

18 U.S.C. § 3553(b)(2)(D) instructs courts to consider imposing a sentence to "to provide

the defendant with needed educational or vocational training, medical care, or other correctional

treatment in the most effective manner."   Mr. Moreno-Vasquez requests this court recommend

to the Bureau of Prisons that he receive treatment, to the extent it is available, for his speech

impediment and vocational training in computers. It is respectfully submitted, however, that such

education or training will be available to Mr. Moreno-Vasquez with a sentence far below that

recommended by the guidelines in this case.


Respectfully Submitted,


/s/ Serbo C. Simeoni, Esq.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the original of the foregoing has been furnished by Electronic
Filing to Sheryl L. Loesch, Clerk of the Court, U.S. District Court, Middle District of Florida,
and that e-mail notification of this filing will be sent to all interested persons on this 28th day of
December, 2021.


/s/ Serbo C. Simeoni
Serbo C. Simeoni, Esq.
1700 N. McMullen Booth Rd.
Suite A-7
Clearwater, FL 33759
E-Mail Address: simeoni07@gmail.com
Tel. #: (727) 799-3506
Fax #: (727) 202-5104
Florida Bar No.: 0921970